IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARIA LINDSAY and DEAN    )    CIVIL NO. 12-00277 LEK-BMK
LINDSAY,                )
                      )
        Plaintiffs,    )
                      )
    vs.               )
                      )
BANK OF AMERICA, N.A.,; BAC  )
HOME LOANS SERVICING, LP;   )
BANK OF NEW YORK MELLON; JOHN )
AND MARY DOES 1-10,      )
                      )
        Defendants.    )
_____ )

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
COMPLAINT FILED ON APRIL 26, 2012**

Before the Court is the Motion to Dismiss Complaint Filed on April 26, 2012 ("Motion"), filed June 11, 2012 by Defendants Bank of America, N.A. ("BANA"), BAC Home Loans Servicing, LP ("BAC"), and Bank of New York Mellon ("BONY," collectively, "Defendants"). Plaintiffs Maria Lindsay and Dean Lindsay ("Plaintiffs") filed their memorandum in opposition on September 4, 2012, and Defendants filed their reply on September 10, 2012.

This matter came on for hearing on September 24, 2012. Appearing on behalf of Defendants was Patricia McHenry, Esq., and appearing on behalf of Plaintiffs was James Fosbinder, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants'

Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

On April 26, 2012, Plaintiffs filed their Complaint against Defendants in state court.  The Complaint asserts the following claims:  Claim I - Negligence; Claim II - Unfair and Deceptive Acts and Practices ("UDAP").  On May 21, 2012, Defendants removed the action to this district court based on diversity jurisdiction.  [Dkt. no. 1 at ¶ 4.]

On July 26, 2005, Plaintiffs executed an Adjustable Rate Note in favor of non-party Countrywide Home Loans, Inc. ("Countrywide"), for the principal amount of $735,000 ("Note"). [Complaint at ¶ 5.]  The Note was secured by a mortgage on Plaintiffs' property, located at 2760 Puu Hoolai Street, Kihei, Hawai`i 96753 ("Mortgage" and "Subject Property").  [Id. at ¶¶ 1, 5.]  Eventually, Countrywide's nominee executed an Assignment of Mortgage ("Assignment") in favor of BONY, which purported to transfer to BONY, "'all of [Countrywide's] right, title and interest in and to the Mortgage.[']"  [Id. at ¶ 7.]

On or about April 7, 2009, Plaintiffs hired Kucsan & McCrea to assist them with their loan modification application, which would be sent to BAC, the loan servicer.  Plaintiffs provided all documents required for a BAC loan modification application.  On or about May 19, 2009, Kucsan & McCrea submitted Plaintiffs' loan modification application and supporting

2

documents to BAC for consideration.  During this process, Plaintiffs continued to make payments under the Mortgage.  [Id. at ¶¶ 3, 8-9.]

Shortly thereafter, BAC denied Plaintiffs' request for loan modification because Plaintiffs were current on the Mortgage.  BAC informed Plaintiffs that they must be delinquent in order to be considered for loan modification.  Although Plaintiffs could have continued making payments under the Mortgage, for the sole purpose of being able to qualify for a loan modification, and relying on the representation and instruction of BAC, Plaintiffs made their last payment on or about June 16, 2009.  Plaintiffs continued to miss payments under the Mortgage, and on or about August 20, 2009, Plaintiffs received a Notice of Intent to Accelerate with respect to the Mortgage ("Notice of Intent").  [Id. at ¶¶ 10-13.]

On September 8, 2009, Plaintiffs received an email from Kucsan & McCrea informing them that their application for a loan modification was still under review with BAC.  Plaintiffs continued to receive similar emails on September 22, 2009, October 15, 2009, November 11, 2009, and December 7, 2009. Meanwhile, Plaintiffs also received calls from BAC regarding their delinquent account.  After Plaintiffs mentioned that they were under review for a loan modification, BAC agents would continue to reaffirm to Plaintiffs that they must remain

3

delinquent on the Mortgage in order to qualify for a loan modification.  [Id. at ¶¶ 14-16.]

On December 28, 2009, Plaintiffs received a proposed modification agreement from BAC, under which Plaintiffs' principal and interest payments would ultimately increase. Plaintiffs could not afford such an increase and accordingly declined the proposed modification on February 2, 2010.  [Id. at ¶¶ 17-20.]

In late February 2010, Plaintiffs retained The Law Firm of Carlos Negrete ("Negrete") to assist them with a second loan modification application.  Plaintiffs sent Negrete all the required documents, and on March 11, 2010, Negrete informed Plaintiffs that their second application was ready for submission.  Negrete also informed Plaintiffs that, pursuant to Negrete's conversation with a BAC Home Retention Department employee, Plaintiffs would need to cancel their original loan modification in order to apply for the new loan modification. [Id. at ¶¶ 21-23.]

On October 12, 2010, pursuant to Negrete's conversation with another BAC employee, Negrete instructed Plaintiffs to submit updated financial information to BAC in order to continue the processing of their loan modification application.  In late October 2010, BAC sent Plaintiffs a letter indicating that their home loan was referred to the Foreclosure Review Committee.  The

letter also stated that Plaintiffs may be eligible to participate in several different programs, including loan modification. [Id. at ¶¶ 24-25.]

On November 11, 2010, Negrete informed Plaintiffs that they received an email from Rodrigo Valdez at BAC, requesting more information, some of which Plaintiffs had already submitted. One week later, Negrete informed Plaintiffs that a BAC employee confirmed that all requisite documents had been received and the checklist for final approval of Plaintiffs' loan modification review was complete. The BAC employee also stated that the Subject Property was in foreclosure with no sale date, and that the Notice of Intent had expired on September 16, 2010. [Id. at ¶¶ 26-27.]

In late November 2010, Negrete informed Plaintiffs that Mr. Valdez had verbally advised that Plaintiffs' request for loan modification was denied on the basis that "'the investor said no.'" [Id. at ¶ 28.] Plaintiffs assert that they never received written communication of this denial from BAC. In February 2011, Negrete again informed Plaintiffs that the Mortgage on the Subject Property was in foreclosure, although no foreclosure sale date had been set. The Complaint alleges that BAC's representations that Plaintiffs had to remain delinquent on the Mortgage in order to qualify for loan modification caused significant damage to Plaintiffs' credit scores. [Id. at ¶¶ 28-

30.]

In Claim I, Plaintiffs contend that BAC acted beyond its role as a money lender and actively engaged in loan modification negotiations, thereby creating a duty of care owed to Plaintiffs.  [Id. at ¶¶ 33-34.]  Plaintiffs allege that BAC initially told Plaintiffs it would take three to six months to process their loan modification application and, by failing to adequately process Plaintiffs' loan modification application after two years of review, BAC breached the duty of care it owes to borrowers such as Plaintiffs.  Plaintiffs further contend that, because BAC was in full control of the loan modification application review process, it was reasonably foreseeable that Plaintiffs would rely on BAC's direction that they had to remain delinquent on the Mortgage before they would qualify for a loan modification.  Plaintiffs assert that BAC reported their delinquencies to credit reporting agencies, resulting in significant damage to their credit scores.  [Id. at ¶¶ 48-50.]

Under Claim II, Plaintiffs allege that BAC committed unfair and deceptive acts or practices in violation of Haw. Rev. Stat. § 480-2.  [Id. at ¶¶ 51-74.]  Plaintiffs contend that BAC never intended to provide Plaintiffs with a loan modification, but merely made such representations in order to "maximize its fees and the payments it [could] extract from Plaintiffs."  [Id. at ¶ 67.]  Plaintiffs allege that BAC was deceptive in making the

representation that Plaintiffs would only qualify for loan modification if they remained delinquent on the Mortgage, and in reporting these delinquencies to credit reporting agencies. Plaintiffs contend that, because BAC has unilateral control over the modification process, Plaintiffs had no choice but to meet its demands for financial documents in hopes of receiving a loan modification.  Although BAC allegedly made express or implied representations that Plaintiffs were eligible for a loan modification, Plaintiffs assert that BAC does not in fact possess the authority to modify Plaintiffs' Mortgage, making BAC's representations deceptive acts.  [Id. at ¶¶ 62-64, 70-73.]

The Complaint prays for the following relief:  an order enjoining BONY from foreclosing upon the Subject Property; statutory damages; punitive damages; treble damages pursuant to Claim II; attorney's fees; compensatory damages; and other appropriate relief.  [Id. at pg. 18.]

I.  **Defendants' Motion**

Defendants filed their Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), and assert that each claim of the Complaint fails to state a claim upon which relief can be granted.  Defendants also allege that Plaintiffs failed to plead sufficient facts to support their claims, as required by Fed. R. Civ. P. 8 and 9(b).  [Motion at 1.]

A.    **Claim I - Negligence**

1.    **As Against BONY**

Defendants assert that the Court should dismiss Claim I as against BONY because Claim I does not contain any allegations against BONY. [Mem. in Supp. of Motion at 6.]  Defendants argue that Plaintiffs only name BONY as a defendant "in hopes of enjoining BONY from evoking its properly-assigned power of sale on the [Subject] Property, even though BONY played no role in the loan modification process, and even though Plaintiffs admit that they *intentionally defaulted* on the [Mortgage]." [Id. at 6-7 (emphasis in Mem. in Supp. of Motion) (citing Complaint at ¶ 11).]  Accordingly, Defendants urge the Court to dismiss Claim I as against BONY with prejudice.  [Id. at 7.]

2.    **As Against Remaining Defendants**

Defendants also urge this Court to dismiss Claim I as against BANA and BAC (collectively, "BANA Defendants"[1]) because the BANA Defendants owed no duty to modify the Mortgage, and even assuming, *arguendo*, that they had a duty of care, Plaintiffs are unable to establish breach, causation, or damages. [Id.] Defendants urge this Court to dismiss Claim I as against the BANA Defendants with prejudice because it "consists of nothing more than vague and conclusory 'naked assertions' devoid of 'further

---

[1] Bank of America, N.A. is defending this suit on its own behalf and as the successor-by-merger to BAC. [Mem. in Supp. of Motion at 1.]

factual enhancement.'" [Id. at 9 (some citations and quotation marks omitted) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).] Furthermore, Defendants argue that Claim I should be dismissed with prejudice because Plaintiffs cannot establish causation or damages. [Id. at 14-15.]

### a.   **Duty of Care**

Defendants point to Plaintiffs' concession that, in terms of originating mortgage loans, lenders generally owe no duty of care to borrowers. [Id. at 8 (some citations omitted) (citing Complaint at ¶ 34).] Defendants further contend that loan servicers also do not owe such a duty. According to Defendants, the BANA Defendants acted within their roles as loan servicers to analyze Plaintiffs' multiple loan modification applications, and no special circumstances existed that would give rise to a common law duty owed to Plaintiffs. [Id. at 8-10.]

### b.   **Breach of Duty**

Defendants also assert that, even if the BANA Defendants owed Plaintiffs a duty of care as to their loan modification applications, Plaintiffs are unable to establish a breach of the BANA Defendants' alleged duty. Defendants argue that, despite Plaintiffs' failure "to supply any facts or law in support of their allegations that a loan modification is 'adequately processed' within three (3) to six (6) months," each

of Plaintiffs' multiple modification applications was indeed

adequately processed according to Plaintiffs' own alleged

standard.  [Id. at 10-11 (quoting Complaint at ¶¶ 48-49).]

### c.   Causation

Defendants argue that, because Plaintiffs decided to

intentionally default on the Mortgage and have not made a payment

on the Mortgage since June 2009, Plaintiffs are unable to

establish causation.  [Id. at 14 (citing Complaint at ¶ 11).]

### d.   Damages

Defendants further assert that Plaintiffs have failed

to allege damages.  Defendants argue that Plaintiffs have not

alleged facts to demonstrate that Plaintiffs' default on the

Mortgage alone was negatively affecting their credit scores.

Defendants contend that any damage to Plaintiffs' credit scores

is a "direct result of their own *decision* to *intentionally*

*default*" on the Mortgage.  [Id. at 15 (emphasis in original).]

Accordingly, Defendants urge the Court to dismiss Count I as

against the BANA Defendants with prejudice for Plaintiffs'

failure to state a negligence claim.

### B.   Claim II - UDAP

#### 1.   As Against BONY

Defendants urge the Court to dismiss Claim II as

against BONY because, like Claim I, Claim II does not contain any

allegations against BONY.  [Id. at 6-7.]  Accordingly, Defendants

urge this Court to dismiss Claim II as against BONY with prejudice.

### 2.   As Against Remaining Defendants

Finally, Defendants argue that Claim II as against the BANA Defendants fails because of insufficient pleading.  [Id. at 2, 16.]  According to Defendants, there are three essential elements to a UDAP claim:  "'(1) a violation of [Haw. Rev. Stat.] chapter 480; (2) which causes an injury to the plaintiff's *business or property*; and (3) proof of the amount of damages.'" [Id. at 16 (emphasis Mem. in Supp. of Motion) (quoting Davis v. Four Seasons Hotel, Ltd., 122 Hawaii 423, 435, (2010)).] Defendants contend that satisfaction of the first element "'is not sufficient *ipso facto* to support the action,' because 'forbidden acts cannot be relevant unless they cause [some] private damage.'"  [Id. (alteration in Mem. in Supp. of Motion) (quoting Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Haw. 225, 254 n.30 (1999)).]  Thus, Defendants contend that Plaintiffs have not pled sufficient facts to support their UDAP claim because damage to their credit scores does not constitute an injury to Plaintiffs' "business or property" under the statute.  [Id. (citing Haw. Rev. Stat. § 480-13(a)).]

Defendants assert that Claim II also fails because "it is predicated on the faulty notion that [the BANA Defendants were] required to give Plaintiff [sic] a modification."  [Id.

(citing Complaint at ¶ 67).]  Defendants point to the lack of supporting case law in the Complaint, and argue that courts have held to the contrary.  [Id. at 17 (citing Nool v. HomeQ Servicing, 653 F.Supp.2d 1047, 1052 (E.D. Cal. 2009)).]

Furthermore, Defendants contend that Plaintiffs' allegations of misrepresentations ground Claim II in fraud. According to Defendants, Plaintiffs' allegations lack the particular circumstances constituting the alleged fraud to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).  Defendants argue that Plaintiffs cannot claim the BANA Defendants committed a misrepresentation just because Plaintiffs did not accept the terms of the proposed modification, nor can Plaintiffs establish that Defendants' modification process is unfair.  Accordingly, Defendants urge this Court to dismiss Claim II as against the BANA Defendants with prejudice. [Id. at 17-19.]

## II.  **Plaintiffs' Memorandum in Opposition**

### A.   **Claim I - Negligence**

#### 1.   **Duty of Care**

In their Memorandum in Opposition, Plaintiffs maintain that the BANA Defendants' actions to engage in the loan modification process with Plaintiffs established a duty of care. [Mem. in Opp. at 3-4.]  Plaintiffs emphasize the "asymmetry in power" between Plaintiffs and the BANA Defendants, and argue that

12

Plaintiffs are "powerless" in this loan modification process. [Id. at 4.]  Plaintiffs contend, therefore, that special factors exist so as to "characterize the relationship between Plaintiffs and [the BANA Defendants] as one in which [the BANA Defendants are] acting beyond that of a mere lender of money." [Id. at 5.]

Plaintiffs acknowledge the rule that a financial institution acting within the scope of its conventional role as a lender of money owes no duty of care to a borrower.  Although Plaintiffs acknowledge this rule, pronounced in Nymark v. Heart Federal Savings & Loan Ass'n, 283 Cal. Rptr. 53 (Cal. Ct. App. 1991), they argue that it is merely a general rule. [Id. at 3.] "Plaintiffs maintain that mortgage servicers, including [the BANA Defendants], by definition and in the performance of their services, are at all times acting beyond the conventional role as a mere lender of money." [Id.]

In the alternative, Plaintiffs argue that this Court should find that BANA owed a duty of care to them by applying the six-factor test used by the Nymark court, which considers:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendants's conduct, and [6] the policy of preventing future harm.

Nymark, 283 Cal. Rptr. at 58 (citation and quotation marks

13

omitted).

According to Plaintiffs, the application of the six-factor test used in <u>Nymark</u> to the instant case would establish that the BANA Defendants owed Plaintiffs a duty of care in processing their loan modification applications.  [Mem. in Opp. at 5.]  Plaintiffs appear to align their argument with the <u>Nymark</u> six-factor test, and contend that:  (1) the transaction was intended to affect Plaintiffs in their ability to keep their home; (2) the harm resulting from mishandling Plaintiffs' modification application process was readily foreseeable; (3) the injury to Plaintiffs is certain, as their home is now facing foreclosure; (4) there is a close connection between the BANA Defendants' conduct and Plaintiffs' injury to the extent that Plaintiffs' credit scores would not have been so damaged but for the BANA Defendants' conduct in reporting delinquency on the Mortgage; and (5) recent actions taken by state and federal governments indicate a public policy of preventing future harm to home loan borrowers, such as Plaintiffs.  Based on these factors, Plaintiffs argue that the BANA Defendants owed them a duty of care during the loan modification application process.  [<u>Id.</u> at 5-7.]

## 2.  <u>Breach of Duty</u>

In arguing that Defendants breached the duty of care, Plaintiffs emphasize the Complaint's allegation that the BANA

Defendants "systemically failed to timely and accurately process each of Plaintiffs' modification applications." [Id. at 8.] Plaintiffs further allege that their first loan modification application was entirely ignored by the BANA Defendants because Plaintiffs had been current on the Mortgage. [Id.] Plaintiffs argue that the BANA Defendants "failed to provide Plaintiffs with proper notice of the outcomes of their application[,]" which ultimately resulted in a breach of the duty to properly process their loan modification applications. [Id. at 9.]

### 3.   Causation

Plaintiffs maintain that a causal connection exists between Defendants' breach and Plaintiffs' harm.  Again, Plaintiffs argue that it was "palpably reasonable for Plaintiffs to believe that they had no other alternative but to stop making their mortgage payments in order to qualify for a loan modification." [Id. at 11.]  Moreover, but for Defendants' misrepresentations, Plaintiffs would have sought alternate foreclosure avoidance relief.  [Id.]

### B.   Claim II - UDAP

Contrary to Defendants' argument, Plaintiffs contend that their UDAP claim is actually based upon the assumption that the BANA Defendants were "required to process Plaintiffs' loan modification application in a fair, transparent and honest manner," and that the BANA Defendants failed to do so.  [Id. at

12.]  Plaintiffs point to a twenty-five billion dollar settlement resulting from a complaint by forty-nine state attorneys general alleging that banks, including BANA, "engaged in a pattern of unfair, deceptive and unlawful practices in the course of their conduct, management and oversight of loan modification . . . ." [Id.]  In sum, Plaintiffs argue that they have sufficiently plead the who, what, when, where, and how of their UDAP claim.

## III. **Defendants' Reply**

### A.   **Claim I - Negligence**

In reply, Defendants argue that there is no legal support for Plaintiffs' claim that an absolute duty exists between every loan servicer and borrower.  [Reply at 4-5.] Defendants cite to multiple cases supporting their argument that, absent special circumstances, loan servicers owe no duty to borrowers.  Defendants also argue that an imbalance of power in favor of the loan servicer, without more, does not constitute a special factor that gives rise to a duty of care.  [Id. at 5-6.] Defendants also deny that the six-factor Nymark test establishes a duty of care owed by Defendants.  [Id. at 9-13.]  For the same reasons as set forth in the Motion, Defendants contend that Plaintiffs are still unable to establish the remaining requisite elements of a negligence claim.  [Id. at 13-15.]

### B.   **Claim II - UDAP**

Defendants maintain that Plaintiffs' allegations are

16

"vague, conclusory, and factually unsupported[,]" and, therefore, Plaintiffs have failed to state a UDAP claim. [Id. at 15 (some citations omitted) (citing Iqbal, 129 S. Ct. 1937 at 1949).] Defendants argue that, even if Plaintiffs have met the pleading requirements, Plaintiffs will be unable to establish a loss of business or property sufficient to maintain their UDAP claim. [Id. at 16.]

Defendants also maintain that Plaintiffs' UDAP claim fails to state with particularity the circumstances constituting fraud or mistake, as required by Rule 9(b). [Id. (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)).] Defendants state:

> Plaintiffs cannot allege that but for the alleged misrepresentations, they "would have sought alternate foreclosure avoidance relief [Opp. at 11]," when they claim that "it is palpably reasonable for Plaintiffs to believe that they had **no other alternative** but to stop making their mortgage payments in order to qualify for a loan modification." Opp. at 11 (emph. added).

[Id. at 17.]

Accordingly, Defendants urge this Court to dismiss the Complaint with prejudice. [Id.]

## DISCUSSION

## I.   Dismissal of the Complaint as Against BONY

As an initial matter, Defendants urge the Court to dismiss the Complaint as against BONY. Defendants assert, and the Court agrees, that neither Claim I nor Claim II contain any

allegations of wrong-doing against BONY.  [Mem. in Supp. of Motion at 6; Reply at 3.]  The Court therefore concludes that Plaintiffs have failed to state a claim against BONY.

In determining whether to dismiss a claim with or without prejudice, this Court has stated, "'Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment.'"  Tedder v. Deutsche Bank Nat'l Trust Co., Civil No. 11-00083 LEK-KSC, 2012 WL 1028125, at *7 (D. Hawai`i March 23, 2012) (quoting Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009)).  The Court notes that, at the hearing on the Motion, it presented Plaintiffs' counsel with the opportunity to address whether the Complaint should be dismissed with prejudice or, if dismissed without prejudice, how the Complaint could be amended so as to properly state a claim. Plaintiffs' counsel, however, did not address either issue.

The Court therefore FINDS that it is clear that the Complaint as against BONY could not be saved by any amendment.

The Court GRANTS the Motion as to the claims against BONY, which are hereby DISMISSED WITH PREJUDICE.

## II.  Dismissal of Claim I - Negligence as Against the BANA Defendants

Defendants seek dismissal of Claim I against the BANA Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), which permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  <u>See</u> <u>Keams v. Tempe Tech. Inst., Inc.</u>, 110 F.3d 44, 46 (9th Cir. 1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554, 127 S. Ct. 1955).

<u>Haw. Motorsports Inv., Inc. v. Clayton Grp. Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

In order to establish a negligence claim, Plaintiffs "must demonstrate a duty, breach of that duty, legal causation, and actual injury[.]"  <u>See</u> <u>Black v. Correa</u>, CV. No. 07-00299

19

DAE-LEK, 2007 WL 3195122, at *8 (D. Hawai`i Oct. 30, 2007).

> Courts generally hold that lenders do not owe their borrowers a duty of care sounding in negligence. <u>McCarty v. GCP Mgmt., LLC</u>, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (citing <u>Champlaie v. BAC Home Loans Servicing, LP</u>, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009) ("[A]s a matter of law, [a] lender [does] not owe a duty in negligence not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.") (some citations omitted)).

<u>Caraang v. PNC Mortg.</u>, 795 F. Supp. 2d 1098, 1122 (D. Hawai`i 2011).

Plaintiffs acknowledge this general rule.  [Complaint at ¶ 34; Mem. in Opp. at 3.]  Nevertheless, Plaintiffs argue that Defendants owed them a duty of care in processing their loan modification applications pursuant to the six-factor test used in <u>Nymark</u>.  [Mem. in Opp. at 5.]  Although this district court has previously cited <u>Nymark</u> for its general rule that a lender does not owe a duty of care to its borrower, <u>see, e.g.</u>, <u>Paik Apau v. Deutsche Bank Nat'l Trust Co.</u>, Civil No. 10-00699 SOM/RLP, 2012 WL 300417, at *5 (D. Hawai`i Jan. 31, 2012), it does not appear to have cited the alternative six-factor test.

In further support of its argument that the BANA Defendants owed Plaintiffs a duty of care, the Complaint relies on <u>Ansanelli v. JP Morgan Chase Bank, N.A.</u>, No. C 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011).  [Complaint at ¶ 34.] In <u>Ansanelli</u>, the plaintiffs, homeowners, sought a loan modification from the defendant loan servicer.  2011 WL 1134451,

at *1.  The plaintiffs alleged that the defendant delayed the loan modification process before eventually placing them on a trial modification plan, with the guarantee of permanent modification in the future if payments were timely.  The plaintiffs remained on the trial modification plan, but were twice denied permanent modification over a period of eighteen months.  The plaintiffs alleged that, during this period, the defendant informed them their loan was current and instructed them to continue paying the modified amount, when, in fact, the defendant had been reporting the plaintiffs' loan as past due. Id.

The plaintiffs filed suit, and the defendant moved to dismiss, arguing that, with regard to the plaintiff's negligence claim, the defendant owed no duty of care to the plaintiffs.  Id. at *7.  The court denied the defendant's motion as to the negligence claim, concluding that the plaintiffs alleged sufficient facts that the "defendant went beyond its role as a silent lender and loan servicer [so as to] . . . constitute sufficient active participation to create a duty of care[.]"  Id.

In response, Defendants argue, and this Court agrees, that the facts of Ansanelli are distinguishable from those of the present action.  [Mem. in Supp. of Motion at 10.]  In Ansanelli, although the plaintiffs initially contacted the defendant to request loan modification, the defendant loan servicer was

21

actually the party that prompted the plaintiffs to engage in a
trial modification plan, whereas this action resulted after
Plaintiffs initiated contact with the BANA Defendants to apply
for a loan modification.  Compare Ansanelli, 2011 WL 1134451, at
*1, with Complaint at ¶¶ 9-10.  Furthermore, the plaintiffs in
Ansanelli never received a permanent loan modification, merely a
trial modification, whereas, in the instant case, Defendants
offered Plaintiffs a permanent loan modification, which
Plaintiffs voluntarily declined.  Compare Ansanelli, 2011 WL
1134451, at *1, with Complaint at ¶¶ 17-20.  Without more,
Plaintiffs have not alleged that the BANA Defendants acted
"beyond the domain of a usual money lender" so as to create a
duty of care owed to Plaintiffs.  See Ansanelli, 2011 WL 1134451,
at *7 (internal quotation marks omitted).  Because the Complaint
does not allege sufficient facts to establish a duty of care owed
by Defendants, Plaintiffs have failed to state a claim for
negligence.

        The Court notes that it presented Plaintiffs' counsel
with the opportunity to address whether the Claim I should be
dismissed with prejudice or, if dismissed without prejudice, how
Claim I could be amended so as to properly state a claim.  See
Tedder, 2012 WL 1028125, at *7 (quoting Harris, 573 F.3d at 737).
Plaintiffs' counsel, however, did not address either issue.  The
Court therefore FINDS that it is clear that Claim I as against

22

the BANA Defendants could not be saved by any amendment.

The Court GRANTS the Motion as to Claim I against the BANA Defendants, which is hereby DISMISSED WITH PREJUDICE.

**III. <u>Dismissal of Claim II - UDAP as Against the BANA Defendants</u>**

Defendants also seek dismissal of Claim II as against the BANA Defendants pursuant to Rule 12(b)(6).  Defendants argue that Claim II is grounded in fraud, and does not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Pursuant to Rule 9(b), a party is required to make particularized allegations of the circumstances constituting fraud.  <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

In their pleadings, Plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice."  <u>See</u> <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); <u>see also</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind - or scienter - of the defendants may be alleged generally." (citation omitted)); <u>Walling v. Beverly Enters.</u>, 476 F.2d 393, 397 (9th Cir. 1973)

(stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

> When there are multiple defendants,
>
> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.

Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (alterations in Swartz) (internal quotation marks and citations omitted); see also Meridian Project Sys., Inc. v. Hardin Constr. Co., 404 F. Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud claims involve multiple defendants, the complaint must satisfy Rule 9(b) particularity requirements for each defendant." (citations omitted)).

A motion to dismiss for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6)[.]"  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted.  Twombly, 550 U.S.

at 563-64 n.8 (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

Plaintiffs allege that the BANA Defendants "deceive[d] Plaintiffs into believing that they [would] get a loan modification" in order to keep the Mortgage in default before ultimately foreclosing on the Subject Property.  [Complaint at ¶¶ 67, 72.]  Plaintiffs assert that, "[d]espite [the BANA Defendants'] repeated assurances, . . . [the BANA Defendants have] still failed to provide Plaintiffs with a meaningful modification after two years."  [<u>Id.</u> at ¶ 72.]  According to Plaintiffs, the BANA Defendants did this in order to "increase their profits by abusing the modification process and continuing to mislead borrowers, like Plaintiffs, rather than genuinely offering permanent loan modifications."  [<u>Id.</u> at ¶ 62.]

Plaintiffs allege that these acts by the BANA Defendants constitute violations of Haw. Rev. Stat. § 480-2(a).  [<u>Id.</u> at ¶¶ 51-74.]  Section 480-2(a) states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  "A practice is unfair when it 'offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  <u>Long v. JP Morgan Chase Bank, N.A.</u>, 848 F. Supp. 2d 1166, 1179 (D. Hawai`i 2012) (quoting <u>Balthazar v. Verizon Hawaii, Inc.</u>, 109 Hawai`i 69, 123 P.3d 194,

202 (2005)).  Haw. Rev. Stat. § 481A-3 also sets forth various
forms of deceptive trade practices.

After careful consideration of the allegations
regarding the terms of the December 28, 2009 proposed
modification and the surrounding facts, this Court concludes that
Plaintiffs failed to plead a plausible UDAP claim.  This district
court has recognized that:

> "[A]s a general rule, a financial institution
> owes no duty of care to a borrower when the
> institution's involvement in the loan transaction
> does not exceed the scope of its conventional role
> as a mere lender of money." Nymark v. Heart Fed.
> Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct.
> App. 1991).  Nothing in the Complaint indicates
> that any Defendant "exceed[ed] the scope of [a]
> conventional role as a mere lender of money."  The
> claims fail on that basis alone. . . .

Casino v. Bank of Am., Civil No. 10-00728 SOM/BMK, 2011 WL
1704100, at *13 (alterations in Casino) (D. Hawai`i May 4, 2011).

First, Plaintiffs admit receiving a proposed
modification agreement from the BANA Defendants on or about
December 28, 2009, and rejecting the same on or about February 2,
2010.  [Complaint at ¶¶ 17, 20.]  Plaintiffs apparently do not
consider the proposed modification to be a "meaningful" response
to their loan modification applications because, under the terms
of the proposal, their monthly mortgage payments would have
actually increased.  [Id. at ¶¶ 18, 72.]

Nevertheless, the Court FINDS that the terms of the
proposed modification were reasonable under the circumstances,

26

and that the proposal was neither deceptive nor unfair.  <u>Compare</u> Complaint, Exh. A at 35-40 (Adjustable Rate Rider),[2] <u>with</u> Complaint at ¶ 18.  By the time the BANA Defendants offered the proposed modification, Plaintiffs had already been in default for about six months, and a total of $20,147.59 in delinquent interest and fees was added to the original principal under the Mortgage.  [Complaint at ¶ 18.]

Moreover, Plaintiffs' Mortgage was an adjustable rate mortgage, which contained a teaser interest rate of one percent, and could go as high as 9.950%.  [<u>Id.</u>, Exh. A at 36.]  In the proposed modification, the BANA Defendants offered Plaintiffs a three-tiered fixed rate mortgage, the terms of which would have been more favorable to Plaintiffs' than those of their current adjustable rate mortgage.  Under the terms of the proposed modification, Plaintiffs interest rate would have been 3.750% for the first five years, 4.750% during the sixth year, and 5.000% for the remaining years.  [Complaint at ¶ 18.]  Because Plaintiffs' intentional default on the Mortgage resulted in additional interest and fees, the proposed modification for a fixed rate mortgage, though higher in monthly payments, was nevertheless reasonable under the circumstances.

---

[2] Because Exhibit A contains multiple documents with varying forms of pagination, and the Exhibit as a whole is not consecutively paginated, the Court's citations to Exhibit A reflect the page numbers in the CM/ECF system.

Second, Plaintiffs allege that damage to their credit scores occurred because of Defendants' deceptive representation that Plaintiffs would not be considered for a loan modification unless they remained delinquent under the Mortgage. [Id. at ¶¶ 10, 73.] At the hearing on the instant Motion, Defendants' counsel argued, and this Court agrees, that the BANA Defendants are within their rights, as money lenders, to prioritize the processing of loan modification applications according to the needs of their borrowers. The BANA Defendants, therefore, were neither unfair nor deceptive in informing Plaintiffs that their loan modification application would not be processed unless they remained in default on the Mortgage, which would eventually make Plaintiffs' application a higher priority for loan modification.

For the above reasons, this Court CONCLUDES that Plaintiffs have failed to sufficiently allege a UDAP claim against the BANA Defendants. Contrary to Plaintiffs' contentions, the BANA Defendants did not exceed their conventional roles as a mere lenders of money in processing Plaintiffs' loan modification applications. In fact, the Complaint indicates that, even after Plaintiffs voluntarily denied the proposed modification they received from the BANA Defendants, Plaintiffs were the ones who decided to apply for another loan modification. In effect, it was Plaintiffs who insisted on continuing the loan modification process, and they

28

admit that the Mortgage remains in default.  [Complaint at ¶¶ 20-23.]

Moreover, the Court notes that, at all times relevant to the instant action, Plaintiffs were represented by counsel.

Again, Plaintiffs' counsel did not address the issue as to whether Claim II as against the BANA Defendants should be dismissed with or without prejudice.  Plaintiffs' counsel also did not speak to how Claim II as against the BANA Defendants could be amended to properly state a claim.  The Court therefore FINDS that it is clear that Claim II could not be saved by any amendment.  See Tedder, 2012 WL 1028125, at *7 (quoting Harris, 573 F.3d at 737).

Defendants' Motion is therefore GRANTED as to Claim II against the BANA Defendants, which is hereby DISMISSED WITH PREJUDICE.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss Complaint Filed April 26, 2012, filed June 11, 2012, is HEREBY GRANTED.  Plaintiffs' Complaint is HEREBY DISMISSED WITH PREJUDICE, and the Court directs the Clerk's Office to close the instant case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 18, 2012.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

MARIA LINDSAY, ET AL. V. BANK OF AMERICA, N.A., ET AL; CIVIL NO. 12-00277 LEK-BMK; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT FILED ON APRIL 26, 2012